MICHAEL HAYDEN *vs.* JONAS STONE *et ux.*

Pleas in abatement may be followed by pleas to the merits.

A. and B. his wife made and delivered their negotiable promissory note to the plaintiff. The note was made in Massachusetts where the parties resided, and was valid there. Suit on this note was brought in Rhode Island, the writ being served on the husband by attaching his interest in the realty of his wife, on the wife by attaching her realty, and on both by attaching the wife's share of an intestate estate in the hands of an administrator. Pending the suit the husband was adjudged a bankrupt and subsequently died.

*Held*, that the wife being legally incapable in Rhode Island to make a promissory note, the action against her could not be maintained.

*Held,* further, that as in Rhode Island the husband must be made co-defendant with the wife, and there was in this case no service of the writ on the husband, the action was fatally defective.

ASSUMPSIT.   Heard by the court on an agreed statement of facts.

This case was heard upon the following agreement signed by the attorneys of the litigants.

" This is a suit upon a promissory note, dated Hyde Park, Massachusetts, June 1, 1875, payable to the plaintiff, Michael Hayden, or order, for $2,500, eighteen months after date, with interest at eight per cent. per annum, payable quarter annually during said term, and for such further term as said principal sum or any part thereof shall remain unpaid, and signed by the defendants, Jonas Stone and Addie E. Stone his wife.

" The case is submitted to the court upon the following statement of facts and a jury trial is waived :

" The defendants, Jonas Stone and Addie E. Stone his wife, made the note declared on, which was secured by mortgage upon real estate in Taney County, Missouri, which note was due and unpaid at the time this suit was commenced.

" That the only service of the writ in said case was by attachment of their right, title, and interest in certain real estate in Pawtucket, Rhode Island, which had descended to the defendant Addie E. Stone, as one of the heirs at law of her father, Dr. Benoni Carpenter, of said Pawtucket, and by attachment by trustee process of the personal estate of the defendants, being the share of said Addie E. Stone in the personal estate of said Benoni Carpenter, in the hands of Frederic B. Carpenter, administrator upon the estate of said Benoni, as shown by his affidavit in this cause.   Notice by mail as required by statute was sent by the attaching officer to the defendants.

" Since the suit was commenced Jonas Stone, one of the defendants, has been adjudged a bankrupt, and died subsequent to such adjudication.   Both the plaintiff and defendants at the time said note was made and this suit was commenced resided in the State of Massachusetts.

" That chapter 184 of the acts of the Legislature of Massachusetts of the year 1874 is to be considered a part of this statement,

with the same effect as if specifically set forth. The declaration and pleas are made part of this case.

"It is agreed that under the foregoing statement of facts the court shall decide the question of the liability of said Addie E. Stone upon said note to the plaintiff, and whether any of the property of said Addie E. Stone, in this State, is liable to the attachment in said suit shown by the officer's return on the writ."

*July* 10, 1880. POTTER, J. This is an action brought in Rhode Island against Jonas Stone and his wife, upon a promissory note executed in Massachusetts by husband and wife, both being then domiciled there.

Jonas Stone pleads in abatement that the writ was served by attaching certain land, and by garnishment of certain personal property and not otherwise; and it appears by the statement of facts that the land belonged to his wife, and the personal property was in the hands of an administrator of his father-in-law's estate. According to previous decisions [1] this constitutes no service on the husband.

Addie E. Stone, the wife, pleads that the writ was served on her in the same manner and not otherwise; and that she had no attachable interest in either the personal or real estate.

The replication mistakes one fact which it is not material to consider, and sets forth that the defendants, by pleading the general issue, have submitted themselves to the jurisdiction of the court.

The husband, after suit commenced, was adjudged bankrupt, and has since died.

That the defendant may plead in abatement and does not waive that defence by filing his pleas to the merits at the same time, provided they be subsequent in order, is settled in *Gardner* v. *James*, 5 R. I. 235.

But the main question in the case is as to the capacity or power of a married woman resident in Massachusetts to make a contract there, enforcible in this State.

The statutes of Massachusetts, of 1874, cap. 184, § 1, provide

---

[1] *Greenwich Nat. Bank* v. *Hall*, 11 R. I. 124; *Conway* v. *Armington*, 11 R. I. 116.

that " A married woman may . . . make contracts oral and writ-
ten . . . in the same manner as if she were sole; " and § 3 pro-
vides she " may sue and be sued in the same manner, and to the
same extent, as if she were sole."

As a general rule the validity of a contract is to be determined
by the law of the place of contract.    Story Conflict of Laws,
§§ 242, 280; Wharton Conflict of Laws, §§ 401, 419; *Andrews* v.
*Pond*, 13 Pet. 65.   So with the forms of execution and solem-
nization.    Wharton Conflict of Laws, §§ 401, 606, 676; see also
Savigny and Fœlix, quoted by Lawrence, Commentaires, tome
iii. 265.

But there is much contrariety of decision and many exceptions
made by the cases, the courts generally trying to carry into ef-
fect the intention of the parties, and sometimes to protect their
own citizens from imposition, especially in the case of married
women and persons under age.

But here the contract was without dispute good in Massachu-
setts, and the question before us is what by the law writers would
be called a question of *status*, or the effect of the capacity to
contract.

Being capable of making the contract in Massachusetts, and
not capable in Rhode Island, does her capacity in Massachusetts
avail her in Rhode Island, so that such contract would be en-
forcible here against her personal or real estate.

The civil law writers held that the capacity of the domicil fol-
lowed the person everywhere, and a still older doctrine was that
the capacity of the domicil of origin was not changed by a change
of domicil.

But while there is great difference of opinion upon some of the
points we have mentioned, there is very little upon the points
which more immediately affect this case; and the reason will be
apparent from the mere statement of them.

Every State has full control over property within it and over
the process of its courts.   It has the right to regulate the trans-
fer of real property, stocks, and personal property within its
limits; and it will not permit a foreign law to be intruded or to
interfere with its own laws on those subjects.    See Wharton
Conflict of Laws, §§ 278, 297, 304, 334, 335, 339, 353.    And a

contract valid by the laws of one State cannot be enforced in another, unless such a contract made between its own citizens could be enforced there, or, in other words, it depends on the *lex fori*.

On any other doctrine we should have a confusion of laws in the community, some persons and acts being regulated by the local laws and some by the laws of foreign states; and we should be in the situation of some countries in the Middle Ages, where different nationalities had been intermingled by immigration, or oftener by conquest, each retaining its ancient laws.

In this State the liability of a *feme covert* to suit depends entirely upon the common law, except in the case provided for by Gen. Stat. R. I. cap. 152, § 6, and § 16.

By the common law the only case in which the wife could be sued was where she had made a contract while sole, in which case the husband and wife must be sued together. 1 Chitty on Pleading, *57. If the wife survive she may be sued alone upon contracts made before coverture, but during marriage she could not be sued alone, nor could husband and wife be sued together in *assumpsit*, because the promise as to her is void. And if sued upon any contract made during coverture, she may plead the coverture in bar. 1 Chitty on Pleading, *58, 59.

The only cases where a married woman can be sued alone in Rhode Island are those specified in § 6 above named. She may *sell* and *convey* any of her personal estate except chattels real, furniture, plate, jewels, bank and other stocks, mortgage debts, and savings bank deposits; but see Gen. Stat. R. I. cap. 140, § 58; and she may make contracts for the sale and conveyance thereof. She may *contract* to *sell* and to be sued upon it.

It may further illustrate the case to inquire whether she, remaining married, could, either while resident abroad or on coming here, sue in this State. Evidently not except in the cases where our law allows it.[1] She can have no greater right in this State than a married woman residing here, and our law has pro-

---

[1] In one other case, that of a sale of intoxicating liquors to a husband, a wife may sue for damages in her own name. See Pub. Laws R. I. cap. 508, § 34, of June 25, 1875. See also Rev. Stat. R. I. cap. 151, and Pub. Laws R. I. cap. 609, March 29, 1877.

vided no remedies, nor mode of suing or being sued, for foreigners, different from those applicable to our own citizens in similar cases.

The suit is also defective for another reason. There was no valid service upon the husband, and it stands therefore as if the wife had been sued alone, which cannot be under our laws except as before stated.                *Judgment for defendants for costs.*

*William H. Clapp*, for plaintiff.

*Charles H. Parkhurst*, for defendant.

NOTE BY MR. JUSTICE POTTER. — Some account of the laws relating to property of married women.

The first movement in the General Assembly of Rhode Island to modernize the laws on this subject was in January, 1840. January 14, 1840, the Judiciary Committee of the House reported a bill giving the Supreme Court certain powers as to appointing trustees, empowering a single judge to make any order or decree except a final decree in vacation, and further providing that certain stocks owned by married women should not be sold by the husband unless the wife joined in the conveyance, that the husband might receive the income during life, and on his death it was to survive to the wife or her appointees or legal representatives. Her household goods and furniture, owned at the time of marriage or which became hers after marriage, were secured to her in the same way.

This bill, simple as it now seems, was the subject of long discussions January 18, 22, and 23. It was advocated by the late Hon. John Whipple, E. R. Potter, and others, and vehemently opposed by the late Hon. James F. Simmons, was taken up and adopted by sections, and then after one motion to postpone had failed, was finally postponed to the May session by a majority of three.

June, 1841, an act was passed which now makes chapter 151 of the General Statutes, giving certain powers to a married woman coming into this State without her husband, he never having resided here. This act grew out of the famous D'Hauteville case.

The subject was not revived until the revision of 1844, when

the present law was substantially enacted, and mainly through the exertions of the late Hon. Wilkins Updike, then a member of the House.

Section 1 of the present act, Gen. Stat. R. I. cap. 152, is substantially the same as before, except that the word *absolutely* is inserted. Section 2 remains as in 1844. Section 3 also, except that the last paragraph, providing that the receipt of the wife shall be sufficient in all cases, was added in 1857. Section 4 was first passed in January, 1870. Section 5 is as in 1844. Section 6 was inserted in 1857, then as section 5. Section 7 of 1872 is the same as section 6 of 1857. In March, 1868, it was amended by omitting the word *seised*, so as to provide for the case of a husband who had made an assignment for creditors. The revising committee in 1872, having intentionally or by mistake left the section as it stood in 1857, the legislature in May, 1873, by Pub. Laws R. I. cap. 324, May 29, 1873, restored it as it was made to read in 1868.

Section 13 as to wills. By the Act of 1844, a married woman could dispose of personal estate by will, and by act passed January, 1856, the power was extended to real estate.

Sections 15 and 16 were amended in 1872.

The Revised Statutes of 1857, contained a provision, cap. 136, § 22, passed May, 1854, for the relief of the niece of Cyrus Butler, Esq.[1] This section was omitted in 1872, all disabilities from alienage having been removed. See Gen. Stat. R. I. cap. 161, § 6. An additional provision was made by Pub. Laws R. I. cap. 609, March 29, 1877, giving a married woman certain powers in case of the desertion or insanity of her husband.

And under the provisions of Pub. Laws R. I. cap. 508, § 34, June 25, 1875, a woman may now sue in her own name for damages arising from the sale of intoxicating liquors to her husband.

---

[1] She married an English subject, and subsequently by Butler's will received a large realty in Rhode Island.